The first matter, case number 15-1649, United States v. Fritz Brian Blanchard Good morning, Ms. Davis Good morning, Your Honor. May it please the Court, Mary Davis v. Blanchard I'd like to request an amendment from you, Your Honor You may Thank you Samuel Grebelin pleaded guilty to interstate transportation for the purpose of prostitution. His plea was based on a scheme that he had to transport three young women from Maine to Boston, where they would act as prostitutes for him. Blanchard, his friend, was charged both as an in-principal and an aide and abettor to this crime. He was convicted as an aide and abettor. I think there were two main things wrong with this trial that should allow him to be retried. First of all, conviction requires proof that the activity, the crime, took place before he crossed state lines in Maine. So both the knowledge and intent for an aide and abettor, as well as the actual assistance that he provided, would have had to have taken place in Maine. A lot of the activity in this case involved things that happened in Boston. To fill that need, the government called Samuel Grebelin, who testified that his friend, Fritz Blanchard, posted pictures that he, Grebelin, had taken of Alicia, a young woman, on a back page, a website, that was an escort service. That was Grebelin's testimony that Blanchard had done this, helped him post these, and it was done on March 13th through March 15th when they were at a hotel in Bangor, and it was actually posted from a Bangor location. After Grebelin's testimony, the government wanted an ad, but the problem was it wasn't the ad. It had a different date of being created on March 23rd and posted on March 27th, and it had a different location, being Portland, Maine. When Alicia, the subject of the ad, herself testified, she said the pictures were a different number of pictures. I should make that clear, not content of the pictures. But in addition to the location and the date, also the sales pitch was, quote, completely different. This is really important because although Grebelin could authenticate the pictures that he took, and the government and the judge thought that authentication of the pictures was fine, it really was not because the ad, if you look at it, is a lot more than just the pictures. It's the ad, not just pictures laying around in a hotel room. It's the ad, itself, that promotes the prostitution and invents an intent to prostitution. That's the sales pitch. That's the, hey, here we are. We're open for business. This is what I can do for you. This is how you contact me. The pictures, by themselves, do not carry any of those indications that would be relevant towards the crime. What's the rest of the evidence that you gave your clients? The rest of the evidence? Well, the rest of the evidence that occurred in Maine was this. I don't understand this, in Maine. Because you wanted, the crime would have had to have been completed when they crossed over the bridge to New Hampshire. Both elements of the crime would have had to be met. It's the transportation. Did you raise that as an issue before? No, it wasn't an issue before the court. I think all the parties agreed with that and the jury instructions agreed with that. Everybody argued that. So I think that, I think the idea is that Blanchard would have had to have the intent, particularly as an aid or an embedder, the knowledge and the intent before the crime took place, which is actually transportation. As a matter of fact, no one alleges any prostitution took place in this case at all. I thought that was evidence from the two alleged prostitutes. What about your clients? The prostitutes took place, the prostitutes had said, Gregory's girlfriend said she prostituted herself in Maine, but nothing after the trip to Boston. So there would have been no interstate, there would have been no federal crime, it would have been a state crime of promoting prostitution. Excuse me, you may be right that they weren't successful when they got to Boston, but you do concede that there were instances of prostitution in Maine, and there was testimony that the purpose of the trip when business got slow in Maine was to move the prostitution enterprise into Boston. Isn't that all that's required? No, Your Honor, because that was Gravely who made that statement. If one accepts Gravely's evidence, isn't that sufficient to meet the interstate transportation requirement? No, because the prostitution that Gravely was referring to with his girlfriend, Alicia, all took place in Maine, and although Blanchard was around in the hotel room, nobody said that he was in Boston. Well, I think there's no sufficiency challenge here. So I think if I understand what you're arguing, it's that there needs to be some evidence of an intention to have the prostitution occurring in Boston before they got to Boston, before they left Maine. Thank you, Judge, that's exactly right. And then you're saying that you agree there is some evidence of that, which is Gravely's testimony to that effect. But I take it your argument is you were nonetheless prejudiced by the introduction of these photographs, because that was additional evidence of that point, and you're saying that was improper evidence to admit because of the authentication problem. Right. And then you say, just if I get it right, because all we have then is the Gravely testimony, we can't say it was harmless to have admitted the photographs. Since, I mean, do you think we would be asked, because that was improperly authenticated evidence, that could have tainted the conclusion? Is that the idea? Absolutely right. Excuse me. Judge Toya, in part, was making the point that this was cumulative evidence. You're saying it wasn't cumulative, it was absolutely necessary, and therefore an error in its introduction. No, Your Honor, I'm not saying it was necessary, I'm saying it was crucial. Because the hole in the case, if there was a hole, was what happened in Maine, what was the intent when they left Maine, and had he assisted in Maine before the transportation occurred? Because there may be evidence that he did things in Boston, but you can't really bootstrap that back to say that the event that he aided, the actual aiding, occurred there. And what happened with this is that he said he didn't post these ads. Gravely says he did post the ads. And so there is a dispute about if he ever even posted any ads, and then the ads that come in are not the ads that are in any way tied to him. But he's not accused of posting an ad, he's accused of having an intent to have a prostitution scheme, aiding and abetting a prostitution scheme in Boston. So why isn't enough evidence, even notwithstanding the problem with the ads, that the person who's running the scheme testifies he was in on it, they in fact travel to Boston together, he's with the very people that are said to be in on it, they're staying in a hotel, there's evidence that he had taken a trip to Boston previously for prostitution, and the pictures are of these people, there is evidence that the pictures are in fact who they are. So the only thing is there's a question whether the actual ad that was put to the jury was really something he produced. Why couldn't we say, yeah, maybe that shouldn't have come in, but still look at the full picture. There was enough evidence that we can't say that evidence alone so taints the picture that was put to the final determination that we have to reverse the conviction. Well, the problem with that, Your Honor, is a lot of the evidence was just gravely, not just his testimony, but gravely renting a car, gravely driving the girls, gravely explaining what their job was to be. But he doesn't deny he was with them, but there's evidence of him with those girls in Boston. There was evidence he was with them, and there was evidence that the girls were thinking about going to Boston on the way to Miami and to go shopping. There was other evidence of a reason for the trip. Am I out of time? Your time is up now, yes. You have one more minute, though, later. Morning. I'm Margaret McGoy for the government. Let me make clear that this case did not rely exclusively on Mr. Gravely. The government's case of guilt could have been made exclusively on the basis of the testimony of two women who acknowledged that they were prostitutes for the defendant, one of them after the fact, and on the testimony of the police officers and the corroboration by records and other forms. Looking exclusively to what Philbrook testified, she's the one that Gravely met in Presque Isle, and she was the first one who became involved in this adventure. She said that the defendant was present briefly when the salacious photographs of her were taken. She testified that the defendant went with Gravely to McDonald's to post the ads because there was no Internet access in the motel. She testified that when the defendant and Gravely returned from posting the ad at the McDonald's that they showed it to her. She testified that there were different iterations of the ad. The first one had five pictures of her and a different sales pitch, but she acknowledged that the person who was depicted in Government Exhibit 1, A, was her, B, the ad had her telephone number, and C, the ad had her email address. She further testified that the defendant waited with Gravely in a car while she serviced two customers in Bangor. She testified that on the second trip to Bangor that the defendant helped Gravely rent the room. He did the same thing when they went to Portland. He helped to rent the first motel room. With respect to the second motel room, there really can't be any question that the defendant was involved in that because the records show that he used his Massachusetts identification to rent that room. It's clear that the ads of MJ, who was the second prostitute, were taken in that hotel room. If you look at this case abstractly, the back page issue and authentication of a back page ad is a question of some importance to prosecutors throughout the country, given back page and the link to prostitution. So you've told us a lot of reasons why the back page ad isn't that important in this case, but I want to go back to the question of authentication of that. And the government provided an explanation that it's hard to recapture the first ad because by the time you issue the subpoenas, it's much later, and they then provide you with the most current iteration of it. Is that sufficient for authentication? And what do you do with Ms. Davis' argument that the text of the ad changed? Maybe the photos were in common and the address was in common, but that what is actually said in the advertisement was very different, and they were responsible for that. I have several answers for you, Judge Lynch. One is that the standard under Rule 901A is really quite lenient. It requires, as this Court has interpreted it, only a reasonable likelihood that the item is what it purports to be. There's no one way to prove authenticity, and the proponent need not exclude every possibility of authenticity. So that's one answer. The second question is, what did this purport to be? This purported to be an advertisement for sex, for pay. And I think all this Court needs to do is look at the ads themselves, and you will conclude that they were advertisements of sex for pay. It wasn't being admitted for the date? It was not being admitted for the date. Not in any respect? Well, the date, let me hit that one head on, Judge Barron. Whether the first ad was created on March 12th and 13th, which is when they rented the first hotel room in Bangor, or whether the ad was created or posted on March 23rd makes no difference to me. That's a different question. I'm just trying to think, what was being authenticated? Was it being said, this is a March 12th ad? No. This is an ad for the sexual services of Alicia Philbrook that was posted on the Internet, that produced on the website. Without respect to date? The date was irrelevant. No, no, it was the date. I don't know what it means when you say the date was irrelevant. I mean, it might be that it doesn't matter, but I'm trying to figure out what was entered into evidence as. As an ad that was posted for Philbrook. On what date? That's a simple question. Was the jury told, this is evidence of an ad on X date? No, the jury was told, this is an ad for the services of Alicia Philbrook. There was dispute among the parties. Closing arguments focused on the issue of, is this the right ad? And the parties clearly exposed that in front of the jury, and evidently either the jury thought it didn't matter whether it was on March 12th, or they thought that there was so much evidence of the defendant's guilt that the date didn't matter. So the government's position is not that you can have this authenticated as a March 12th ad? I'm not trying to authenticate it as a March 12th ad. And you're saying that the record shows it was not authenticated as such? I don't believe you read the record that way. You will read it and you will form your own conclusions, but I think it is very clear that the parties disputed that vigorously in front of the jury as to whether it was the right ad. I don't see why you would say the date is irrelevant. Because, in fact, this was simply an iteration of an ad that had been placed, what, the 23rd to the 12th, roughly 10 days before. And I assume that when it was placed, it was placed with a payment that would continue the ad for a period of time. So you are, in fact, drawing a relationship between the most current iteration and the evidence of the original posting. Well, if I may go directly to the question of why the date doesn't matter, the reason the date doesn't matter is because the last iteration of that ad was March 23rd and the trip to Boston took place on March 28th. So any way you slice it, that ad was posted when the defendant was in Maine and produced Section of Customs for Philbrook. Yes, Judge Lynch? Suppose, though, that the ad, the back page ad that the government was trying to get into evidence bore a date of four years after the date of the government's evidence of the production of the ad and the defendant disclaims any knowledge of why that ad suddenly appears. Do we, at that point, have an authentication problem? Not on the facts of this case. Oh, of course not. Let me explain why not on the facts of this case, Judge Lynch. No, I want you to answer the four years later question. I think, once again, that would be a matter that went to the weight of the evidence and not to its invisibility. But returning to the facts of this case, if I may, what we have in this case with respect to government's Exhibit 1 is we have the woman who is depicted in the image saying, That photograph of me was taken on March 12th. That's my phone number. That's my e-mail. As a result of posting of ads of me, I had customers for sex before I went to Boston. So if we had nobody authenticating that they were the person who was in it and providing the information... Somebody else happens to like the photo in the ad and they pay for it to be posted four years later. She and her pimp have nothing to do with it. And I think that's a jury question. You're saying it was probably authenticated as an ad. Correct. Okay. Sometimes it's possible that we want to authenticate it as an ad as of X date. Correct. Okay. So in a case like that, I think Judge Lynch's question is, because we're trying to figure out, and the government surely has an interest in this over time, if practically speaking, the government would like to be able to authenticate the ad as an X date, let's say March 1st, but in fact they can't capture the ad until March 8th, so all they have is the ad from March 8th, what is the government's obligation in order to have it authenticated as a March 1st ad? I think it's going to depend on the circumstances of the case, of what other witnesses are available to authenticate the content and the photographs in it. If there was nobody, I think we would have a bigger problem, Judge Lynch. But I don't see why you wouldn't have a problem if you don't have somebody saying something about why it's reasonable to believe that this March 8th ad was plausibly a March 1st ad. Well, and perhaps in future cases, to answer what I think is your concern, Judge Lynch, perhaps in the future what the government should do is call someone from back page to say... Correct. Indeed. Yes, indeed. But I return to the question of whether that affected the outcome of this case, and as I began to elicit, even if you put Gravely completely out of the picture, Alicia Philbrook and Miss Howland described enough activity in Maine that demonstrated the defendant's intent that the women would be taken to Massachusetts for purposes of prostitution. So any error in the admission of these two exhibits is clearly harmless. But you would say there is no error because you had testimony from someone, didn't you? Yes. About back page's habits of not keeping original... Well, two things about... I think you were asking me about the prosecutor's statements to the court. Yeah. Two things about that. One is that the prosecutor was addressing the legal question of whether this was admissible, and she was giving the court an explanation. The court was allowed to rely on that. But even if you discard that... There was no objection from the defendant. And there was no representation that what she was saying was false. Okay. But there was no actual evidence supporting what she was saying, just her argument. It was her representation on the legal ruling of whether it was admissible, not what rate should go to it. The question of the rate... But that just means that to the extent that it was going in, it was just a presumption without any basis in the record that that was true. I'm not calling you transparent. If I understand what you're saying, you're saying that to the extent that one was concerned that there was a gap because there was nothing before the court about the back page practices that would lead one to conclude that an ad capture on X date must have also been an ad that appeared eight days before. All that happened was the prosecutor argued that that was the case. The prosecutor argued that was the case, but the gap, any gap in authenticity was filled, both by Philbook herself and also by Howard. Did she testify as to the date of the ad? No. Okay. So I'm just saying with respect to the date issue. The date issue, and again... I understand you think it's... To the extent I read the record and conclude it was authenticated as an ad as of the earlier date, you say that's not how I should read the record. I understand. If I were to read it that way, what would I have to support the notion that it was of that date beyond the prosecutor's argument to the judge unsupported by anything in the record? The prostitute testified that the photographs were taken the first time they rented a hotel room in Bangor. That was documented by records of the renting of the room. Right, but did she testify that the ad was posted on any particular date? No. Right, so then I... What she did testify was that from the hotel room in Bangor that the defendant and Gravely went to the McDonald's to post the ad. So I think a reasonable inference of that evidence is that the day the photographs were taken was the day that the ad was posted. We know it was her. So the jury was permitted to make all of those connections and the jury could have concluded from those events that the ad that was posted was the ad formed from the picture taken on March 12th or 13th and that the ad they actually saw was a subsequent iteration of it. Does that answer your question, Judge Barron? I think it does matter to how this opinion gets read. That's the reason why we're probing you so hard. The government surely does not want to have to call someone from Backpage in all of these interstate prostitution cases. One could build into the opinion the prosecutor's representation here but I don't know whether that's wise because there is no evidence. It can't be that every ad that's posted on X date was obviously posted earlier. That just doesn't make any sense. Some ads are posted for the first time on the date they're first posted. Correct, and I think as you're framing your opinion, Judge Lynch, you to some extent need to look at the facts of the case and I believe I have convinced you that the jury couldn't have found that it was posted on that. In terms of your concern about how you frame it with respect to the prosecutor's representation, the prosecutor was talking to the court as an officer of the court. He was in the context of a legal ruling in which the evidence is less important than what the arguments are. But in the future, if the court wants to signal to prosecutors that we need more authentication, court is free to do that. But the court should not reverse this conviction on that basis because even if these ads were admitted in error, any error was harmless. Thank you. Thank you. The only ad that was in any way tied to Fritz Pranzer regarding Alicia was posted on March 13th. It had a location of Bangor. It had a different number of pages, although I am not arguing that the pages by themselves weren't authenticated. I'm arguing when you add them into an ad it becomes much worse. Alicia herself testified that the sales page was different. This wasn't the ad. It was not an ad that was related to Fritz Pranzer and he shouldn't have his jury looking at it, mulling it over, thinking that it was related to him. We need evidence to say that this is a true and accurate representation of what happened. Wrong date, wrong place, wrong sales page, wrong number of photos. That isn't his ad, even though he denied making one, even if you believe Blake. Just so I get with the nature of the dispute is that you're not contesting that the ad that actually was entered in was an ad that was posted prior to the trip to Boston? No. I'm arguing only that it's not an ad that was in any way tied by evidence to my client. In order for that to have been tied to your client, your claim is, it would have to have been dated when? It would have had to have been dated the 13th through the 15th when the witness said he posted the ad, my client posted the ad. And when was this one actually dated, the one that was entered? The 23rd and the 27th. I see. Got it. And the government made the point of saying they changed it all the time. This is all I have to work with. Certain aspects have changed from when it was originally posted. So the government is admitting that the ad is different, the ad is changed. Usually when there's a discrepancy in evidence, there has to be a chain of custody. Someone has to say, who changed it, why did they change it, how did they change it? You can't just say, the doctor wrote an autopsy report, this is a different one, there are some changes. We don't really know what they are, but it's the best the government can do. Or this is a tax return, someone monkeyed with it, but we're going to hold it against the defendant because it's the best the government can do. The court has a responsibility to show that exhibits are what they are purported to be. It only has to be a limited amount. Granted, it doesn't take credibility into issue, but there has to be evidence to base the finding. If the evidence shows that the original text as posted was an advertisement for sex, and the example the government puts in uses different language, but it's still an advertisement for sex, does it matter? Of course it matters, because only the defendant's language can be tied to the defendant. It's so subjective to say what an ad is for sex and what's for an escort. I mean, we can all read these ads and say, oh, we know what she was saying. But you can't put words in someone else's mouth to make a crime, and you can't say it's a threat that someone else made. Excuse me, I'm interrupting you. I'm sorry. You have to look at the rest of the evidence when you make that statement. Yes, Your Honor. And the rest of the evidence in his cross-examination was statements, total character assassination based on propensity evidence of events that the prosecutor alleged in her questions as true, not involving these events at all, but involving prostitutes in Old Town, phone calls to escort services in Portsmouth. So by the time she was finished with the cross-examination, it was up to his eyeballs in inadmissible similar acts that had never been proven by any evidence. It wasn't even testified to by a witness who could be cross-examined or have personal knowledge. It was that backdoor, actual tricky cross-examination where inadmissible evidence is presented to the jury disguised as a question. When the defendant objected, the court seemed to think that she had a good faith basis. Well, a prosecutor's good faith basis is not evidence. It takes a witness with personal knowledge. None of these other events were at all admissible, and yet the defendant leaves with the jury thinking, oh, my goodness, this lady with all of the prestige of the government has said all of these particularly detailed questions about phone calls to Unique and visits to Tori Mitchell's house. No one's testified to it, but they're thinking, why would she say this if it wasn't true? He must be up to his eyeballs in this prostitution escort service. So the two damning pieces of evidence should not have been admitted. Thank you. Your time is up. Thank you. Thanks, Kaye.